UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


| | | |
|---|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) ) | No. 1:13-cv-01276-MJD-TWP |
| vs. | ) ) | |
| CONSOLIDATED CITY OF INDIANAPOLIS, INDIANA, CITIZENS ENERGY GROUP, | ) ) ) ) | |
| Defendants. | | |


**ENTRY ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

At the core of this action lies a Construction Contract to which the Defendant

Consolidated City of Indianapolis ("City") and non-party Amtech Construction, Inc. ("Amtech")

were parties. In 2008, Amtech achieved substantial completion of the project, the Forest

Park/Southport Corridor of the City's Septic Tank Elimination Program (STEP), but Amtech

filed articles of dissolution with the Secretary of State of Indiana in 2009, before final payment

was made. As surety to Amtech, Travelers Casualty and Surety Company of America

("Plaintiff") is the assignee of Amtech's contract rights pursuant to their Indemnity Agreement,

and in 2013 Plaintiff filed this suit, alleging that the City and Citizens Energy Group

("Defendants") breached the Construction Contract. In response, Defendants filed a

Counterclaim pursuant to the Performance Bond, to which Plaintiff is a signatory as surety,

asserting that Plaintiff is now liable to Defendants for Amtech's alleged default on the

Construction Contract and alleged inability to reimburse the Defendants for expenses incurred in

making good the defaults on the project.

The matter is now before the Court on two motions for partial summary judgment. First,

Plaintiff moves for summary judgment dismissing Defendants' Counterclaim against it on the

basis that the Construction Contract and Performance Bond were assigned to the CWA Authority

("CWA"), an affiliate of Defendant Citizens Energy Group ("Citizens"), in an Asset Purchase

Agreement, and thus Defendants do not have standing to bring a claim of default and breach of

contract against Plaintiff. [Dkt. 49.] In response, Defendant Citizens moves for summary

judgment dismissing Plaintiff's claim against it on the basis that it was not a party to the

Construction Contract, that it is not the assignee of the Construction Contract or Performance

Bond.[1] [Dkt. 58.] For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for

summary judgment on Defendants' Counterclaim against it. Additionally, Defendant Citizens's

motion for summary judgment on Plaintiff's claims against it is **GRANTED**.

## I. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure mandates that the district court "shall

grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

moving party "always bears the initial responsibility" to show, through the "pleadings,

depositions, answers to interrogatories, and admissions on files, together with the affidavits, if

any," that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

---

[1] Citizens's motion also asserts as a basis for tis entitlement to summary judgment that Plaintiff failed to direct any
discovery requests toward Citizens. [*See* Dkt. 58 at 2.] However, it is not necessary to request discovery from a
certain party in order to bring a claim against that party, and Plaintiff's failure to serve discovery requests upon
Defendant Citizens Energy Group does not, in and of itself, entitle Citizens to summary judgment on Plaintiff's
claims against it.

U.S. 317, 323 (1986). If the party moving for summary judgment would not bear the burden of proving a certain element of a claim or defense at trial, it becomes the nonmoving party's burden to prove the existence of that essential element, or a genuine issue of material fact pertaining thereto. *Id.* at 323-24.

In ruling on a motion for summary judgment, the court must construe all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 601 (1986). When the complete record, presented in favor of nonmoving party, could lead no rational juror to find for the nonmoving party, "there is no genuine issue for trial." *Id* at 599. "[U]pon proper showings of the lack of a genuine, triable issue of material fact," the granting of summary judgment promotes the "just, speedy and inexpensive determination of every action" that is the very purpose of the Federal Rules of Civil Procedure. *Celotex*, 477 U.S. at 327.

## II.  Undisputed Facts

In December of 2005, Plaintiff entered into an Indemnity Agreement with Amtech. [Dkt. 51-1.] As an inducement to Plaintiff and in consideration of Plaintiff's "execution and/or delivery of one or more Bonds, refraining from canceling one or more Bonds, and/or assumption of obligations by [Plaintiff] of one or more Bonds," Amtech agreed that, in pertinent part, in the event of Default (such as its insolvency or abandonment of any contract), Plaintiff has "a right in its sole discretion" to, among other things, take immediate possession of any of Amtech's Property (such as any Contract, any and all sums due under a Contract, and all related damages claims and proceeds), to "assert or prosecute any right or claim," and to "take immediate possession of Contract funds whether earned or unearned." [*Id.* at 2-3.] These relevant portions

of the Indemnity Agreement are the terms upon which Plaintiff brings its breach of contract claim against Defendants. [Dkt. 1 at 5.]

One year later, the City's Board of Public Works voted unanimously to award the "Forest Park/Southport Corridor Septic Tank Elimination Program" project ("the Project") to Amtech for the bid amount of $4,975,055.00.[2] Accordingly, on December 26, 2006 Plaintiff, as surety to Amtech, executed both a Payment Bond and a Performance Bond, each binding Plaintiff to the City in the penal sum of the bid amount of $4,975,055.00. With the Bonds properly issued, the City and Amtech entered into the Construction Contract on January 3, 2007,[3] which required Amtech to achieve Substantial Completion of the Project by December 1, 2007 and Final Completion of the Project by February 1, 2008. [Dkt. 13-2 at 3, 5.]

For reasons unspecified by any party to this suit, Amtech did not achieve Substantial Completion of the Project until May 9, 2008, which was certified by an agent of the Department of Public Works on July 14, 2008. [Dkt. 13 at 2.] Accordingly, Plaintiff executed its consent to Final Payment on August 19, 2008. [Dkt. 51-3.] United Consulting performed a final walk through of the Project site on August 28, 2008, creating a sixteen-item Final Punch List, fourteen items of which were crossed off when the list was revised three months later, noting the date of

---

[2] Board Meeting Minutes, Board of Public Works, at 3-4 (December 20, 2006), http://www.indy.gov/eGov/City/DPW/Old%20CMS%20Docs/Policy/PDF/122006M.pdf. Judicial Notice of "public records available on court and government websites" is permissible. Betz v. Greenville Corr. Inst., 14-CV-104-MJR, 2014 WL 812403 (S.D. Ill. Mar. 3, 2014); see also Patel v. Hurd, 12 C 556, 2012 WL 1952845 (N.D. Ill. May 30, 2012) ("The Court may take judicial notice of facts drawn from public records available on a government website under Federal Rule of Evidence 201(b)").

[3] Although the first line of the Construction Contract between the City and Amtech reads "this agreement is made and entered into as of the 3rd day of January, **2006**," the City Controller signed the agreement on January 3, **2007**, "as authorized by the Board of Public Works on 12-20, 2006." [*Compare* Dkt. 13-2 at 1 (emphasis added) *with* Dkt. 13-2 at 5 (emphasis added).] Because Indiana's "Little Miller Act," Ind. Code 4-13.6-7 *et seq*., requires the contractor or its surety to execute payment and performance bonds on all public works projects with an estimated cost over $200,000, and the Bonds here were issued in December of 2006, the Court concludes that the actual date of execution of the Construction Contract between the City and Amtech was January 3, 2007. This interpretation was confirmed at the hearing on this matter, and counsel for the City acquiesced that, being the third of January, the reference to 2006 was likely a clerical error in light of the New Year.

completion.  [Dkt. 56-2.]  There is no further evidence of record regarding an update to or communication regarding the two remaining Punch List items, and at no point was Final Payment ever made.  [*See* Dkt. 13 at 5.]

On April 1, 2009, Amtech informed the City that all payments pursuant to the Construction Contract, paid to both Amtech and Plaintiff, should be sent directly to Plaintiff.  [Dkt. 13 at 5.]  At that time, the actual retainage available to Amtech was $171,619.92, as estimated by the Construction Administrator of the City's Department of Public Works.  [*Id.*]  Defendants then presumed Amtech to be insolvent, as it voluntarily filed articles of dissolution with the Secretary of State of Indiana one month later, which dissolution was certified by the Secretary of State on May 21, 2009.  [*Id.* at 6.]  The City did not give Amtech written notice of any default prior to its dissolution, but the City maintains that Final Completion was not achieved.  [Dkt. 63-1 at 9.]

One year later, in response to Plaintiff's May 7, 2010 inquiry regarding the status of the Project and the final payment, a City administrator informed Plaintiff's counsel that the City needed a "revised notice from Amtech, in order to issue a one-party check" to Plaintiff, since Amtech's last notice referred to the payment as being paid to both Amtech and Plaintiff.  [Dkt. 56-3.]  Additionally, the administrator informed Plaintiff's counsel that the City was still in the process of gathering information regarding costs incurred by the City for repairs to the Project and still investigating complaints pertaining to the ditches and sidewalks that were affected by the Project.  [*Id.*]  One month later, the City's administrator informed Plaintiff's counsel that there were "substantial performance issues" related to the Project, which Plaintiff contends was the first notice to Plaintiff of such dissatisfaction with Amtech's performance on the Construction Contract.  [Dkt. 56-4.]  At some time between 2008 and 2011, the City spent

5

$5,413.72 to make repairs to the sewer system related to the project, and the City also claims to have incurred unknown expenses in repairs to some of the roads within the Project's area. [Dkt. 63-1 at 11.] To date, these unknown road repair expenses have not yet been detailed. [*See* Dkt. 49-1 at 10.]

In August of 2010, the City entered into an Asset Purchase Agreement with the CWA Authority, to which Defendant Citizens was a signatory in its role as trustee of the public utilities. [Dkt. 13-1 at 1-2; Dkt. 63-1 at 7-8.] Pursuant to the terms of the Asset Purchase Agreement, the City sold "all right, title and interest . . . in, to and under all contracts, licenses and leases related to the System to which the Sanitary District or the City is a party," including all construction contracts and surety bonds. [*Id*. 13-1 at 19.] The agreement also provides that the CWA Authority assumes all of the City's liabilities related to the Acquired Assets and all of the City's performance obligations under the assigned contracts, if assignable. [*Id.* at 20, 22.] Additionally, the Asset Purchase Agreement clarifies that the "Purchaser shall finance, construct, implement and complete the Septic Tank Elimination Projects ("STEP") set forth in Schedule 2.04(d) upon the terms and in the timeframe established therein." [*Id.* at 21 (emphasis in original).] Finally, it is significant to the motions before the Court that the City retained a number of property improvements located on the Belmont Wastewater Treatment Plant, including certain roads. [*See* Dkt. 56-9.] The Asset Purchase Agreement did not take effect until August 26, 2011, when it was certified by the Mayor of the City and the president and CEO of Citizens. [*See* Dkts. 56-6, 56-7.] In its responses to Plaintiff's interrogatories, the City confirmed that it "sold all right, title, and interest in the wastewater system" to the CWA. [Dkt. 63-1 at 7.]

Meanwhile, in February of 2011, DLZ Indiana, LLC ("DLZ") conducted a field investigation of the post-construction conditions of the Project site. [*See* Dkt. 56-1.] In its report, DLZ observed two subgrade issues: (1) voids due to loss of backfill materials and (2) settlement due to consolidation or migration of backfill material. [*Id.* at 2.] DLZ further estimated that the cost of the repair work necessary to rectify the issues could total $604,500.00. [*Id.* at 4.] The City forwarded the DLZ Report and estimate to Plaintiff's counsel, noting that, once particular defects were identified, the City administrator would contact Plaintiff's counsel regarding how the repairs would be handled. [*Id.* at 1.] In response to Plaintiff's First Set of Interrogatories, which the City received three years after the DLZ Report was conducted, the City confirmed that "[t]he work identified in the DLZ Report has neither been completed nor started," and the City further stated that "it is unaware of any amount spent, to date, by Citizens or any party other than the City to repair or replace work that was performed on the project." [Dkt. 63-1 at 8, 12.]

### III. Plaintiff's Motion for Partial Summary Judgment

"Summary judgment is especially appropriate in the context of contract interpretation because the construction of a written contract is a question of law." *Vincennes Univ. ex rel. Bd. of Trustees of Vincennes v. Sparks*, 988 N.E.2d 1160, 1165 (Ind. Ct. App. 2013), *transfer denied*, 993 N.E.2d 182 (Ind. 2013). When the pertinent provisions of a contract are unambiguous, the lack of ambiguity "forecloses any genuine issues of material fact." *Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1389 (7th Cir. 1993). However, even when the terms of a contract *are* ambiguous, summary judgment is still appropriate where no triable issue of material fact arises from the consideration of extrinsic evidence. *Id.* Upon consideration of any motion, the Court may always take judicial notice of matters of public record—facts that are "not subject to

reasonable dispute" and that are "either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

Most central to Plaintiff's motion for summary judgment is its assertion that neither Defendant City nor Defendant Citizens owns the right to bring a claim pursuant to the Construction Contract or the performance Bond, as nonparty CWA was the sole purchaser of the STEP projects and their respective contracts, bonds, and claims arising therefrom. [*See* Dkt. 49-1 at 22.] To provide evidentiary support for this assertion, Plaintiff relies primarily upon the language of the Asset Purchase Agreement, the Defendants' affirmative defenses, and the City's responses to Plaintiff's interrogatories. [*Id.* at 6-10, 22.] Reliance on these sources of record is appropriate, as such reliance properly construes all evidence in favor of the nonmoving parties. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 601 (1986).

In response, Defendants claim that whether the Asset Purchase Agreement prevents the City's[4] Counterclaim is a material fact still in dispute. [Dkt. 55 at 4.] No party disputes that, if not for the Asset Purchase Agreement, the City would have the unencumbered right to pursue its counterclaim against Plaintiff. However, Plaintiff believes that the City sold its right to bring the claim to nonparty CWA, while the City argues that certain roadways related to the Project are still owned by the City as assets that were excluded from the Asset Purchase Agreement and thus the City retains the right to bring the Counterclaim against Plaintiff for the amount spent in repairs related to Amtech's default on the Project. Because contract interpretation is a question of law, whether either Defendant has the right to bring the Counterclaim is ripe for summary

---

[4] Although the Counterclaim was initially brought by the "Defendants." Counsel for Defendant Citizens Energy Group confirmed at the hearing on this issue that, as Citizens was not the Purchaser pursuant to the Asset Purchase Agreement, only Defendant City is alleging the Counterclaim against Plaintiff.

judgment, so long as the language of the Asset Purchase Agreement is unambiguous or

consideration of extrinsic evidence does not give rise to a triable issue of material fact, pursuant

to the standard set forth by the Seventh Circuit in *Hickey*.

The first issue for the Court's determination is whether the language of the Asset

Purchase Agreement is ambiguous on its face. At the outset, Section 2.01 decrees that:

> [E]ach Seller shall sell, transfer, assign and deliver to Purchaser, all of the right,
> title and interest of such Seller to and under all of the assets used, necessary or
> important in the operation of the System . . . except for the Excluded Assets . . .
> free and clear of all Liens.

[Dkt. 13-1 at 24.] The Sellers include the City and the Board of Public Works, the Purchaser is

the CWA Authority, and the System "shall include the Acquired Assets and exclude the

Excluded Assets." [*Id.* at 1, 22.] One of the enumerated Acquired Assets includes the Assigned

Contracts, which is defined as:

> **[A]ll right, title and interest of Sellers in, to and under all contracts**, licenses
> and leases related to the System to which the Sanitary District or the City or any
> of its Affiliates is a party, **including without limitation, all construction
> contracts**, insurance contracts, **surety bonds**, management agreements, architect
> agreements and consultant agreements, relating to the CSO Control measures and
> Equipment and Machinery, vehicles and other items of personal property.

[*Id.* at 25 (emphasis added).] It therefore follows that, so long as the Project and the

Performance Bond upon which Defendants base their Counterclaim was not an Excluded Asset,

Defendant City lost the right to bring a claim pursuant to the Performance Bond when the Asset

Purchase Agreement came into effect in 2011. The Court finds these terms to be unambiguous.

To determine whether the Performance Bond was such an Excluded Asset, the Court

looks again to the plain language of the Asset Purchase Agreement. In Section 2.02, the list of

Excluded Assets incorporates "the Sellers' Access Rights, Reserved Rights and any other assets

listed in Schedule 2.02(e)." In pertinent part, Schedule 2.02(e), lists "Excluded Roads" and other

9

"**improvements located on** the Belmont Wastewater Treatment Plant," which are shown on a map of the Belmont Advanced Wastewater Treatment Plant. [Dkt. 56-9 at 1, 3 (emphasis added).] Schedule 2.02(e) additionally excludes from the Acquired Assets "[t]itle to public rights-of-way, **except for any subsurface occupancies or improvements** used in the operation of the System." [*Id.* at 2 (emphasis added).] No mention is made of contracts or rights to bring claims pursuant to such contracts qualifying as such excluded property, and no mention is made of any ongoing STEP projects being retained as being under Defendant City's responsibility, care, or control.

Also, Section 2.04 adds that the Purchaser "shall assume the liabilities of the Sellers related to the System and Acquired Assets . . . including litigation against either Seller related to the System or the Acquired Assets, [and] performance obligations under . . . STEP (as set forth Section [sic] 2.04(d)) . . . (collectively 'Assumed Liabilities')." [Dkt. 13-1 at 26.] Specifically, Section 2.04(d) provides that the "purchaser shall finance, construct, implement and complete the Septic Tank Elimination Projects ("STEP") set forth in Schedule 2.04(d) upon the terms and in the timeframe established therein" in exchange for $4,700,000. [*Id* at 27 (emphasis in original).] Without having been provided with Schedule 2.04(d), the Court can at least conclude that, pursuant to the clear construction of the Asset Purchase Agreement, the ongoing STEP projects quite literally fell under the category of "Assumption of Liabilities." [*Id.*]

First, the City conceded at the hearing on the matter that there is no dispute as to whether the Construction Contract and its related bonds were transferred to the CWA Authority in the Asset Purchase Agreement. However, the City *does* assert that the roadways affected by Amtech's allegedly defective work, as reviewed in the DLZ Report, were Excluded Assets. [Dkt. 55 at 10.] Specifically, the City asserts that, since they are charged with repairing those

roadways that were allegedly damaged due to Amtech's work pursuant to the Project, it is appropriate to recover the damages pursuant to the Construction Contract that was sold to CWA. [*Id.*]  In conceivable support of this argument, Schedule 2.02(e)(1) identifies certain "Excluded Roads," but such roads are only those that are *improvements located on* the Belmont Wastewater Treatment Plant.  [Dkt. 56-9.]  However, there is no claim that these Excluded Roads are the same as those allegedly affected by Amtech's work, and thus this provision does not salvage the City's argument.  Instead, the City rests its argument on the language of Schedule 2.02(e)(6), which lists the "Title to public rights-of-way" as "Other Excluded Assets."  [*Id.*]  In reply, Plaintiff insisted at the hearing that the "title" to the public right-of-way merely reserved easement rights to such roads, raising the point that Section 7.10 of the Asset Purchase Agreement further defines "City Roads" as those that are located on the Belmont Wastewater Treatment Plant and refers to the arrangement as the "Belmont Road Easement."  [*See* Dkt. 62 at 7-8.]

The Court is not convinced that the City's exclusion of an easement over the Belmont Wastewater Treatment Plant translates to a similarly limited exclusion regarding the general public roadways that pass over the STEP projects.  However, upon further reading of Schedule 2.02(e)(6), the City retained "Title to public rights-of-way, **except for any subsurface occupancies or improvements** used in the operation of the System."  [Dkt. 56-9 at 2 (emphasis added).]  Looking to the DLZ Report, the alleged defects in Amtech's work included (1) "Voids due to loss of backfill materials" and/or (2) "Settlement due to consolidation or migration of backfill material."  [Dkt. 56-1 at 2.]  The Court interprets the "subsurface occupancies or improvements" language of Schedule 2.02(e)(6) to include such backfill to a sewer system as described in the DLZ Report,  Thus the allegedly defective work that was the subject of the

contract between the City and Amtech is an exception to the Excluded Assets as being

subsurface, and is, therefore, not an Excluded Asset. Additionally, the City has made no

argument or evidentiary showing that the *right to sue* pursuant to the Construction Contract or

the Performance Bond was an Excluded Asset. [*See* Dkt. 55.] Thus, pursuant to the

unambiguous terms of the Asset Purchase Agreement, the City sold "all right, title and interest

[in] all construction contracts [and] surety bonds," including the Performance Bond, to the CWA

Authority, and the City did not retain the right to any subsurface occupancies such as the alleged

defects in Amtech's work on the Project. Accordingly, the City no longer possesses the right to

bring the Counterclaim against Plaintiff pursuant to the Performance Bond.

With regard to Defendant Citizens's right to bring the Counterclaim,[5] Indiana law

provides that, in general, "those who are parties to a contract, or those in privity with a party,

have the right to recover under a contract." *Flaherty & Collins, Inc. v. BBR-Vision I, L.P.*, 990

N.E.2d 958, 971 (Ind. Ct. App. 2013), *transfer denied*, 996 N.E.2d 1278 (Ind. 2013). Defendant

Citizens was not a party to the Construction Contract or the Performance Bond upon which it

brings its Counterclaim. [*See* Dkt. 13-2.] Although Citizens was a signatory to the Asset

Purchase Agreement, the CWA Authority was the sole Purchaser of the City's assets. [Dkt. 14 at

84.] Further, in order to distance Citizens from Plaintiff's claims, Defendants emphasized in

their Affirmative Defenses that "CWA Authority, Inc., not Citizens, acquired the System . . .

including the acquisition of all right, title, and interests of Sellers (as defined in the Wastewater

APA) in, to, and under all contracts related to the System including all construction contracts and

surety bonds." [Dkt. 13 at 3.] The Court concurs with this interpretation of the Asset Purchase

---

[5] At the hearing on the matter, counsel for Citizens Energy Group reported that a "dismissal" of its Counterclaim against Plaintiff would be appropriate in light of its lack of purchase of the Construction Contract and its related bonds. However, no such dismissal is yet of record on the Docket, so the Court, in an abundance of caution, will still address this issue.

Agreement, and it is clear that Defendant Citizens does not have the right to bring the

Counterclaim against Plaintiff pursuant to the Performance Bond to which it was not a party and

that it did not acquire.

Finally, the Court acknowledges Defendants' assertion that there are several material

facts in dispute.  First, Defendants argue that "whether the City has damages in excess of the

$5413.72" is a fact in dispute that prevents the Court from making a summary judgment ruling.

[Dkt. 55 at 4.]  In its motion for summary judgment, Plaintiff asserts that it "is entitled to partial

summary judgment on the Defendants' Counterclaim for any amount over $5,413.12," the

amount that the City paid to make certain repairs to the sewers related to the Project.  [Dkt. 49-1

at 27.]  In response, Defendants maintain that Plaintiff could be liable on the Counterclaim for

the estimated costs of repairs outlined in the DLZ report, which are estimated at an excess of

$600,000.  [*See* Dkt. 55 at 6-9.]  However, the Court has found that neither Defendant owns the

right to pursue the Counterclaim as plead against Plaintiff, and without a valid claim an award of

damages cannot be made.  That is not to say, however, that Defendants would not have the

opportunity to argue that any damages awarded when Plaintiff's breach of contract claim is

before the Court may be offset by such costs.  *See Walters v. PDI Mgmt. Servs.*, 1:02-CV-01100-

JDTTAB, 2004 WL 2137513 (S.D. Ind. June 14, 2004).  Without standing to bring the

Counterclaim, however, Defendants cannot be awarded damages, and the alleged existence of

costs and estimates is not a material fact in dispute and does not preclude the Court from making

a summary judgment ruling on Defendants' Counterclaim.

Defendants then contend that "whether the APA prevents the City from recovering

damages for AmTech's defective work" is a material fact that is in dispute.  [Dkt. 55 at 3.]

However, the Asset Purchase Agreement is a contract, and contract interpretation is undeniably a

13

question of law. *Vincennes Univ. ex rel. Bd. of Trustees of Vincennes v. Sparks*, 988 N.E.2d 1160, 1165 (Ind. Ct. App. 2013), *transfer denied*, 993 N.E.2d 182 (Ind. 2013). Accordingly, the parties' disagreement regarding proper interpretation of the plain language of the Asset Purchase Agreement is not a material fact in dispute and does not preclude a ruling on summary judgment with regard to Defendants' Counterclaim.

Finally, Defendants assert that "whether the City intended to assign causes of action under the Construction Contract and Performance Bond **with respect to Excluded Assets**" is a material fact in dispute. [Dkt. 55 at 5 (emphasis added).] While the City's intention with regard to any Excluded Assets may be a point of disagreement amongst the parties, the Court has found that the relevant Project and its contracts and bonds are not Excluded Assets according to the plain language of the Asset Purchase Agreement and the evidence presented. Thus, though there may be a disagreement with regard to the Excluded Assets, any such disagreement is not *material* and therefore does not preclude the Court from ruling in favor of Plaintiff's motion for summary judgment. Having found that neither of the Defendants has the right to bring the Counterclaim (which has been pleaded pursuant to the Performance Bond) against Plaintiff and seeing that no material facts are in dispute, it is appropriate, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for the Court to make a ruling of summary judgment in favor of the Plaintiff regarding Defendants' Counterclaim against it.[6]

---

[6] To be clear, this summary judgment ruling is limited only to the *Defendants*' rights to bring a breach of contract claim against the *Plaintiff* pursuant to the *Performance Bond*, as plead. This ruling does **not** preclude the following: the Defendants from asserting their affirmative defense of their right to set-off against Plaintiff for damages incurred on the Project; the CWA from bringing a claim regarding the alleged defects with the backfill material; or the City from pursuing a claim against Amtech.

**IV. Defendant Citizens Energy Group's Motion for Partial[7] Summary Judgment**

In its own motion for partial summary judgment, Defendant Citizens Energy Group "respectfully requests that any and all of Travelers' claims against Citizens be dismissed with prejudice because Travelers has no legal or evidentiary basis for any claim against Citizens." [Dkt. 57 at 1.] Specifically, Citizens asserts that summary judgment is appropriate because (1) Citizens was not the Purchaser under the Asset Purchase Agreement and therefore not the assignee of the Construction Contract and related bonds and (2) Plaintiff has no evidence that Citizens is otherwise liable in this suit and it would be improper to continue to include Citizens as a party. [Dkt. 58 at 3-4.] In response, Plaintiff merely states that it "has no objection to Citizens' Motion for Summary Judgment, to the extent that Citizens was not a party to the underlying construction contracts at issue, nor was it the assignee of those contracts."

While it initially appears that Plaintiff does not object to the dismissal of its claims against Defendant Citizens Energy Group, Plaintiff's leaves the door open, at least linguistically, with the qualifying phrase beginning "to the extent that." Such a qualification at this stage of the proceedings, however, is ineffective. The Seventh Circuit has made it abundantly clear that "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (internal quotations omitted); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (same); *see also Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). Here, it is clear from the language of the Asset Purchase Agreement that Defendant Citizens was not the Purchaser of the City's assets. [Dkt. 14-1 at 84.]

---

[7] Citizens's motion for summary judgment is "partial" only because the counterclaim was brought on behalf of both Defendants. As noted above, Citizens's counsel has confirmed that the inclusion of Citizens in the counterclaim was inadvertent. This order resolves all claims by and against Citizens in this matter.

Furthermore, Plaintiff conceded at the hearing on this matter that, given Citizens's "dismissal" of its Counterclaim against Plaintiff, Plaintiff does not object to Citizens's motion for summary judgment. Accordingly, summary judgment in Defendant Citizens's favor is proper.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff Travelers Casualty and Surety Company of America's Motion for Partial Summary Judgment [Dkt. 49] and **GRANTS** Defendant Citizens Energy Group's Motion for Partial Summary Judgment [Dkt. 57]. Neither Defendant possesses an interest in the Performance Bond nor possesses a right to raise a claim arising therefrom, so each Defendant is precluded from bringing the Counterclaim against Plaintiff pursuant to such bond. Similarly, Citizens Energy Group was not a party to the Construction Contract or the Purchaser of the City's assets, and Plaintiff's failure to present evidence of Citizens's potential liability precludes Plaintiff from further pursuing its claim against Citizens. Accordingly, only Plaintiff's claims against Defendant Consolidated City of Indianapolis remain. Pursuant to Rule 54(b) of the Federal Rules of Civil procedure, this is not a final order and no judgment will be issued at this time.

Date: 10/31/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Ryan Allan Cook
CITIZENS GAS & COKE UTILITY
rcook@citizensenergygroup.com

Maureen B. Moss
FAEGRE BAKER DANIELS LLP - Indianapolis
molly.moss@faegrebd.com

Shawna Meyer Eikenberry
FAEGRE BAKER DANIELS LLP - Indianapolis
shawna.eikenberry@FaegreBD.com

Gene F. Zipperle, Jr.
WARD, HOCKER & THORNTON, PLLC
GZipperle@whtlaw.com